UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOROTHY VILLA, | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:22-cv-01854-AAQ |
| LOWE'S HOME CENTERS, LLC | * | |
| Defendant | * | |

**MEMORANDUM OPINION AND ORDER**

This is a case involving a negligence claim arising from an alleged trip and fall accident on May 17, 2021. Pending before the Court is Defendant Lowe's Home Centers, LLC's ("Lowe's") Motion for Summary Judgment. ECF No. 23. The Motion has been fully briefed and I conclude that a hearing is not necessary under this Court's Local Rules. *See* Loc. R. 105.6 (D. Md. 2021). It is undisputed that Plaintiff testified that she was not aware of the bag over which she tripped. Nonetheless, Defendant asks that the Court to reject Plaintiff's testimony and conclude that she was aware of the bag when she fell and negligently disregarded it. As the applicable precedents make clear, under the circumstances of this case, whether Plaintiff is to be believed and whether she acted negligently are questions for the jury and not the Court. For these reasons and the reasons discussed below, Defendant's Motion for Summary Judgment shall be denied.

**BACKGROUND**

This premises liability action arises from Plaintiff Dorothy Villa's fall after she tripped on a bag of soil at a Lowe's retail store. On May 17, 2021, Plaintiff was shopping in the Lowe's outdoor garden center in Timonium, Maryland. ECF No. 23, at 1. Earlier on the day of the accident, another unidentified customer walking in the garden center removed a large bag of soil

1

from her cart. ECF No. 23-2 (Video of Incident, at 00:05). The customer stood the bag of soil against a table on which Lowe's was displaying flowers and other plants for purchase. *Id.* at 00:33. Over time, the bag of soil fell over, landing flat on the floor, perpendicular to the display table. ECF No. 23-3 (Video of Incident, at 00:05). The majority of the outdoor center aisle where the bag had fallen remained unobstructed. *See id.*

Forty-seven (47) minutes passed between the customer placing the bag on the floor and Plaintiff arriving in the aisle. ECF No. 27-2, at 5. Although Lowe's did not ultimately preserve the entirety of the video footage from the day, a Lowe's Assistant Manager reviewed the footage during a post-incident investigation. *Id.* The investigation revealed that during those forty-seven (47) minutes, no Lowe's employee walked down the aisle or inspected the area. *Id.* A Lowe's designee testified that the store expects its associates to return misplaced merchandise to the correct location "throughout the day," and that if an associate had walked past and observed the bag of soil, it would have been their responsibility to transport the bag back to the proper retail area. *Id.* at 7.

After the bag had fallen flat on the floor, Plaintiff arrived in the garden center aisle pushing an empty shopping cart. ECF No. 23-4 (Video of Incident, at 00:15). While walking down the aisle, Plaintiff pushed her cart toward the bag of soil and, just before her cart would have hit the bag, turned her cart to "park" it parallel to the fallen bag. *Id.* at 00:18. Plaintiff then turned and walked a few steps around the bag, toward the display table. *Id.* at 00:26. At this point, Plaintiff appeared to be looking at the display table and was standing directly to the left of the bag of soil. *Id.* Plaintiff then picked up a plant from the table and turned to the right to face her cart. *Id.* at 00:45. When she took a small step toward her cart, Plaintiff tripped on the bag and fell to the floor. *Id.*

During Plaintiff's deposition, when she was asked whether she saw the bag on the video footage, she answered "[y]es, but I never saw it that day." ECF No. 23-5, at 3-4. Plaintiff also stated that, on the day of the accident, she did not see the bag of soil when she was pushing her cart toward it, when she was standing next to it, or when she stepped into it. *Id.* at 4-5. Rather, Plaintiff testified that she was "tuned into those geraniums" on the display table. *Id.* at 5. As a result of this accident, Plaintiff allegedly suffered injuries to her face, right wrist, and both shoulders and has experienced chest discomfort, blurry vision, and stress. ECF No. 27-1, at 4-5.

## STANDARD OF REVIEW

The Court will grant a motion for summary judgment only where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there are factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court must deny the request for summary judgment. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The party moving for summary judgment bears the burden of showing that there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de Fr. v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the nonmoving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998). "A party who bears the burden of proof on a particular claim must factually support each element of his or her claim."

*Scott v. United States*, No. PJM-06-2777, 2007 WL 3020185, at *1 (D. Md. Feb. 23, 2007). Thus, on those issues on which the nonmoving party will bear the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256-57. "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *U.S. EEOC v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 437 (D. Md. 2020) (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002)).

## ANALYSIS

Under Maryland law, to assert a negligence claim, a plaintiff "must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 10 (Md. 2013) (emphasis omitted) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 270-71 (Md. 2007)).

In the realm of premises liability, the duty of care an owner or occupier of property owes is based on their legal relationship to the person entering the property at the time of the accident. *Konig v. Ames*, No. ELH-20-3038, 2021 WL 1561518, at *3 (D. Md. Apr. 21, 2021) (citing *Garner v. Supervalu, Inc.*, 396 Fed. App'x 27, 29 (4th Cir. 2010)). The highest duty of care "is owed to a business invitee." *Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 374 (Md. App. 1997). A business invitee is someone "invited or permitted to enter another's property for purposes related to the landowner's business," such as a customer of the business. *Id.* (quoting *Casper v.*

4

*Charles F. Smith & Son, Inc.*, 526 A.2d 87, 92 (Md. App. 1987), *aff'd*, 560 A.2d 1130 (1989)); *see also Moulden v. Greenbelt Consumer Servs., Inc.*, 210 A.2d 724, 726 (Md. 1965); *Oliver v. Maxway Stores*, No. WGC-12-3033, 2013 WL 6091844, at *3 (D. Md. Nov. 18, 2013).

A storekeeper has a duty to protect business invitees from:

> dangers which may arise from some defect or unsafe condition of the physical property . . . [and] dangers which may be caused by negligent acts of [their] employees, or even of customers, where, as a reasonably prudent person, [they] should have anticipated the possible occurrence and the probable results of such acts.

*Giant Food, Inc. v. Mitchell*, 640 A.2d 1134, 1135 (Md. 1994) (quoting *Eyerly v. Baker*, 178 A. 691, 694 (Md. 1935)). Although the duty owed to a business invitee is the highest, it is not unlimited. The owner of the premises "is not an insurer of the invitee's safety." *Tennant*, 693 A.2d at 374 (citing *Moulden*, 210 A.2d at 725). "Like the owner, the invitee has a duty to exercise due care for his or her own safety." *Id.* Generally, an owner has no duty to warn invitees "of an open, obvious, and present danger." *Id.* (citing *Casper*, 560 A.2d at 1135). Additionally, an owner is generally not liable where it has no actual or constructive knowledge of a danger's existence. *Id.* at 374-75 (citing *Lexington Mkt. Auth. v. Zappala*, 197 A.2d 147, 148 (Md. 1964)).

Defendant makes three arguments in support of its Motion for Summary Judgment. Two of Defendant's arguments, if successful, would negate Plaintiff's prima facie negligence claim, while one of Defendant's arguments is an affirmative defense. Defendant argues that the Court should grant summary judgment for each of the following reasons: (1) Defendant was not negligent, as a matter of law, because it had no duty to warn of or address a danger of which it had no notice; (2) Defendant was not negligent, as a matter of law, because the bag that Plaintiff tripped on was an open and obvious danger of which Defendant had no duty to warn; and (3) even if

Defendant was negligent, Plaintiff's claim is barred because she was contributorily negligent. The Court addresses each argument in turn.

**I.     Notice**

Defendant argues that, because it did not have notice of the bag of soil that Plaintiff tripped on, it was not negligent as a matter of law. ECF No. 28, at 3. Generally, for a court to hold a premises owner liable for a condition on the premises that causes an injury, the owner must have either created the dangerous condition or have "had actual or constructive knowledge of its existence." *Moulden*, 210 A.2d at 726. A store owner "is deemed to have constructive notice of a hazardous condition on its premises when 'it appears that the storekeeper could have discovered the condition by the exercise of ordinary care.'" *Konka v. Wal-Mart Stores, Inc.*, No. 97-1013, 1998 WL 24378, at *3 (4th Cir. Jan. 26, 1998) (quoting *Rawls v. Hochschild, Kohn, & Co.*, 113 A.2d 405, 409 (Md. 1955)). Accordingly, storekeepers have a duty to inspect for dangerous conditions created by third parties or patrons and may be liable for failing to discover a danger that a reasonable storekeeper would have discovered. *See, e.g.*, *Tennant*, 693 A.2d at 377; *Rawls*, 113 A.2d at 410.

When the parties present no evidence as to the amount of time that a danger existed, generally an owner will not be charged with constructive notice of the danger. *See, e.g.*, *Zappala*, 197 A.2d at 148; *Moulden*, 210 A.2d at 726; *Rawls*, 113 A.2d at 410. Without evidence of the time a danger existed, "any finding by a jury" that a store's employees should have seen and responded to the danger "would rest on pure conjecture and not on reasonable inference." *Moulden*, 210 A.2d at 726 (quoting *Orum v. Safeway Stores, Inc.*, 138 A.2d 665, 666 (D.C. 1958)). In *Moulden v. Greenbelt Consumer Services, Inc.*, for example, the plaintiff slipped and fell on a string bean in the aisle of a supermarket. *Id.* at 725. The Supreme Court of Maryland held that

the plaintiff failed to prove that the store had actual or constructive notice of the dangerous condition, and thus the store could not be negligent as a matter of law. *Id.* at 726. The Court reasoned that "[t]he bean may have fallen from a grocery cart a few moments before [the plaintiff] walked up the aisle" and that "it would be unreasonable to hold that it is [the owner's] duty to conduct a continuous inspection tour of the store." *Id.* Similarly, in *Lexington Market Authority v. Zappala*, the plaintiff was injured after slipping on oil or grease in a parking garage. 197 A.2d at 148. The Supreme Court of Maryland explained that "[f]or all we know, the oil or grease may have leaked from a car occupying the space beside her car, only a few moments before . . . she slipped." *Id.* "[E]ven if we assume periodic inspections are necessary," the court wrote, "it would be unreasonable to hold that it is [the garage owner's] duty to continuously inspect and sand down any and all [oil] leakage as soon as it occurs." *Id.*

By contrast, where there is evidence of the amount of time a danger existed before it caused an injury, circumstances may require a jury to decide whether the owner acted unreasonably in failing to discover and address the danger. *See, e.g.*, *Rawls*, 113 A.2d at 410 ("Where it might reasonably be decided that the storekeeper could have discovered the dangerous condition by the exercise of reasonable care, the case should be submitted to the jury."). "What will amount to sufficient time" for a storeowner to unreasonably fail to address a danger "depends upon the circumstances of the particular case" and requires:

> consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions.

*Rehn v. Westfield America*, 837 A.2d 981, 984-85 (Md. App. 2003) (quoting *Deering Woods Condo. Ass'n v. Spoon*, 833 A.2d 17, 24-25 (Md. 2003)). When a dangerous condition is present

7

for an exceedingly short amount of time, a court may conclude that, as a matter of law, the owner did not have sufficient time to discover and address the danger before the injury occurred. *See, e.g.*, *id.* at 985 (granting summary judgment in the defendant's favor where less than four minutes passed between a customer spilling a soda and the plaintiff's fall, and therefore "the soda was not on the floor long enough for Chick-fil-A's employees to find it and take action to prevent it from causing an accident."). But, where the "time on the floor" evidence demonstrates that the danger existed for a significant amount of time, a jury determination of whether the storeowner acted reasonably is warranted. *See Dudley v. Target Corp.*, No. JKS 11-1734, 2012 WL 2577789, at *2 (D. Md. July 3, 2012). In *Wiseman v. Wal-Mart Stores, Inc.*, No. 1:16-cv-4030-SAG, 2017 WL 3334858, at *4, *6 (D. Md. Aug. 4, 2017), for example, the plaintiff slipped on a substance that a customer had spilled fifty-eight minutes before the plaintiff's fall. Although the defendant did not have actual knowledge of the spill, the Court held that the plaintiff raised a genuine issue of material fact as to whether the defendant had constructive knowledge of the dangerous condition because of the significant "time on the floor" evidence. *Id.* at *6. Similarly, in *Oliver v. Maxway Stores*, the plaintiff slipped and fell on oil while walking down a store's aisle. 2013 WL 6091844, at *4. The oil had been on the floor for at least thirty minutes before the plaintiff's fall because another customer also fell on it thirty minutes prior. *Id.* The court held that "30 minutes *may* constitute a sufficiently long period of time for [the d]efendants to discover the oil or slippery substance on the floor and either clean the floor and eliminate the hazard or, post caution signs to alert customers about the hazard," making summary judgment inappropriate. *Id.* at *5.

Here, Defendant had no actual notice of the dangerous condition. Video footage reviewed during the post-incident investigation revealed that no Lowe's employee walked down the aisle where the bag of soil fell. Therefore, whether Defendant can be found negligent depends on

whether it may be charged with constructive notice of the condition based on the forty-seven minutes that passed between the bag being placed on the ground and Plaintiff's fall.

This case is similar to the Maryland Supreme Court's decisions in *Wiseman* and *Oliver* as Plaintiff has introduced "time on the floor" evidence from which a jury may conclude that Lowe's negligently failed to discover the dangerous condition. In *Wiseman* and *Oliver*, while the defendants did not have actual knowledge of the dangerous condition, the Court found that fifty-eight and thirty minutes, respectively, were long enough for a jury to reasonably conclude that the store owner should have discovered and addressed the danger, making summary judgment inappropriate. Similarly here, though Defendant did not have actual knowledge of the bag of soil on the floor, Plaintiff has shown that the bag was on the floor for forty-seven minutes. This case is distinguishable from *Moulden* and *Zappala*, in which there was *no* evidence of the amount of time the dangerous condition existed, nor is it like *Rehn* where the condition was only present for a few moments before the accident occurred. Because there is evidence in this case that the soil was left on the ground for an extended period of time, a jury's finding that Lowe's had constructive notice would not be based on "pure conjecture." Rather, a jury could reasonably conclude that the forty-seven minutes that passed between the bag of soil being placed on the ground and Plaintiff tripping on it constituted a sufficiently long period of time for Defendant to find and remove the bag had it acted reasonably, given the relatively large size of the bag, its position in an area reserved for customers to walk, and its close proximity to a display stand where customers' attention was directed.

Defendant argues that it did not have constructive notice of the bag because Defendant did not testify that a Lowe's employee had an obligation to immediately stop and remove the bag. ECF No. 28, at 3. While such testimony would have bolstered Plaintiff's case, as discussed above,

it is not necessary to establish constructive notice. Whether a Defendant had constructive notice is based on an objective standard.

Accordingly, Defendant's arguments as to notice do not merit a grant of summary judgment in its favor.

## II. Open and Obvious Danger

Defendant argues that the bag of soil that Plaintiff tripped on was an open and obvious condition, and thus it did not have a duty to warn of or address the danger. ECF No. 23-1, at 6. Premises owners generally do not have a duty to warn invitees of open, obvious, and patent dangers. *See, e.g.*, *Casper*, 560 A.2d at 1135. An open and obvious danger is one that an ordinarily prudent person would have discovered. *See Md. Sales & Serv. Corp. v. Howell*, 311 A.2d 432, 436 (Md. App. 1973). Invitees have "a duty to exercise due care for [their] own safety[,]" including a "duty to look and see what is around [them]." *Tennant*, 693 A.2d at 374. Whether a condition "is open and obvious is typically a question reserved for the factfinder." *Duncan-Bogley v. U.S.*, 356 F. Supp. 3d 529, 540 (D. Md. Dec. 7, 2018) (citing *C & M Builders, LLC v. Strub*, 22 A.3d 867, 885 (Md. 2011)). Only when "it is clear that any [reasonable] person [in plaintiff's position] must have understood the danger" should a court decide the issue. *Id.* (quoting *C & M Builders*, 22 A.3d at 885) (alterations in original).

In assessing whether a danger was open and obvious, courts must consider whether the premises owner was directing the plaintiff's attention away from the danger and towards a display in the same vicinity. In the case of a storekeeper, the premises owner "expects and intends that his customers shall look not at the floor[,] but at the goods which he displays to attract their attention and which he hopes they will buy." *Tennant*, 693 A.2d at 376 (quoting *Chalmers v. Great Atl. & Pac. Tea Co.*, 192 A. 419, 422 (Md. 1937)). Directing a customer's attention away from the floor

by displaying goods may "prevent them from seeing dangers which might otherwise be apparent." *Id.* (quoting *Chalmers*, 192 A. at 422). "Patrons are entitled therefore to rely to some extent . . . upon the presumption that the . . . passageways provided for their use are unobstructed and reasonably safe[,]" and courts must consider this presumption when evaluating whether a danger was open and obvious. *Id.* (quoting *Chalmers*, 192 A. at 422).

In *Tennant v. Shoppers Food Warehouse Maryland Corp.*, for example, the Appellate Court of Maryland held that a jury should decide whether a danger in a supermarket was open and obvious. *Id.* at 377. There, the plaintiff slipped on a pile of cabbage or spinach leaves and then fell over an empty produce box. *Id.* at 372. The store, like Defendant here, argued that it was not negligent, as a matter of law, because the dangerous conditions were foreseeable, open, and obvious. *Id.* at 375. The court found that a jury should decide the question of whether the leaves and box were open and obvious, reasoning that "the jury would be entitled to consider whether [the plaintiff's] attention was reasonably focused on selecting produce that was on display" rather than on the ground. *Id.* at 377. Similarly, in *Smith v. Rite Aid of Md.*, No. 0936, 2016 WL 2945731, at *6 (Md. App. 2016), the Appellate Court of Maryland found that a jury should decide whether a box that a customer tripped over was open and obvious. There, the plaintiff was hurt while checking out at a cashier's counter. *Id.* at *1. When the plaintiff finished paying, she turned to leave and tripped over a box of magazines which a store employee had been unloading. *Id.* The lower court granted summary judgment in favor of the defendant, finding that the box of magazines was an open and obvious condition. *Id.* at *1-*2. The Appellate Court of Maryland reversed, reasoning that "[t]he cashier counter is an area . . . where the store may expect customers to be distracted." *Id.* at *4. Comparable to the distraction of "eye catching displays," the court explained, "the attention customers give to the cashiers as they . . . prepare for and complete their

11

transactions is not unexpected." *Id.* Furthermore, because the box was on the ground, "it was not necessarily in [the plaintiff's] line of vision as she was walking away[,]" and therefore it could not "be said unequivocally that the tote box was open and obvious." *Id.*

Here, the question of whether the bag of soil that Plaintiff tripped on was open and obvious must be reserved for the factfinder. As in *Tennant* and *Smith*, the allegedly dangerous condition here was on the floor of a store, but the customer's attention was directed upward. While the bag of soil that Plaintiff tripped on was large and unobstructed, a jury would be entitled to consider whether Plaintiff's attention was reasonably focused on the flowers on display rather than on the ground where she would have seen the bag. As Plaintiff testified, she was "tuned into those geraniums." Whether that might make an otherwise-apparent condition less obvious is a factual question for a jury. It cannot be said unequivocally that any reasonable person in Plaintiff's position would have looked away from the plants and to the floor to recognize the danger.

Defendant argues that *Tennant* and similar cases are inapplicable here because the Lowe's outdoor aisle was wide enough to be a "reasonably safe" passage. ECF No. 28, at 3. The argument suffers from multiple limitations. As an initial matter, there is no evidence before the court as to how the width of the aisle in this case compares to the width of the aisle in those cases or the width of an aisle in a common store. Defendant's argument asks the Court to presume that most aisles are narrower, in contra to the applicable standard at this stage of the case. More importantly, as the courts in those cases made clear, storeowners have "a duty to provide reasonably safe passageways" given that storeowners intend for their customers' attention to be directed "not at the floor[,] but at the goods [they] display . . . ." *Tennant*, 693 A.2d at 376 (quoting *Chalmers*, 192 A. at 421-22). Customers are entitled to presume that "the passageways provided for their use are unobstructed and reasonably safe" so that they can maneuver safely around the store while

looking at the goods displayed for sale in the store. *Id.* (quoting *Chalmers*, 192 A. at 422). Accordingly, while the width of the isle is a relevant factor that the jury may consider in determining whether the danger was open and obvious, *Chalmers*, 192 A. at 421-22, it does not conclusively determine the issue, particularly where, as here, there is evidence that the customer's attention was directed elsewhere near where the bag had fallen. As Plaintiff explained: 1) she never saw the bag; and 2) although she walked around the bag initially when walking towards the display, when she attempted to walk back, her focus was on the geraniums. ECF No. 23-5, at 4.

These facts distinguish this case from *Ramseur v. United States*, 587 F.Supp.2d 672 (D. Md. 2007), on which Defendant relies. ECF No. 23-1, at 7. Of importance to the Court in that case, the open and obvious danger was in the middle of the floor, and as the plaintiff in that case admitted, she failed to see it because she was trying to be quiet, not because the premises owner drew her attention elsewhere.[1] *Ramseur*, 587 F. Supp. 2d at 675, 684; *see also Frostbutter v. Bob Evans Farms, Inc.*, No. CBD–12–2388, 2013 WL 4026985, at *9 (D. Md. Aug. 6, 2013) (refusing to follow *Ramseur* because unlike that case: "Defendant could have anticipated that customers' attention would be focused on the sink and mirror and not the curtain below" on which the plaintiff tripped); *Carey-Powe v. Wash. Metro. Area Transit Auth.*, No. 8:19-cv-02157-GLS, 2020 WL 5500164, at *7 (D. Md. Sep. 10, 2020) (distinguishing *Ramseur* as a case in which the plaintiff admitted seeing the danger). Therefore, summary judgment on the basis that the danger was open and obvious is not appropriate.

---

[1] Furthermore, as multiple decisions of this Court have noted, *Ramseur* was limited to its facts, which turned on the additional care the plaintiff should have taken given her footwear. *See Woods v. Dolgencorp, LLC*, No. TJS-15-3249, 2017 WL 4785057, at *2 (D. Md. Oct. 18, 2017) ("The facts of this case are unlike those in *Ramseur* . . . , where a plaintiff's high heel shoes were caught in one of the holes of a perforated doormat."); *Wiseman*, 2017 WL 3334858, at *7 n. 6 (distinguishing *Ramseur* on the basis that it involved "high-heels or spiked heels").

### III.     Contributory Negligence

Finally, Defendant argues that even if it was negligent, Plaintiff was contributorily negligent, barring her from recovery. ECF No. 23-1, at 9. "Contributory negligence is the neglect of the duty imposed" on all people "to observe ordinary care for their own safety." *Campfield v. Crowther*, 249 A.2d 168, 172 (Md. 1969). Contributory negligence is an affirmative defense for which the defendant bears the burden of proof. *See, e.g.*, *Balt. & O.R. Co. v. Plews*, 278 A.2d 287, 293 (Md. 1971). The essential question in determining whether a plaintiff was contributorily negligent is "whether the plaintiff took appropriate precautions to protect his [or her] own interests." *Konig*, 2021 WL 1561518, at *5 (alteration in original) (quoting *Kassama v. Magat*, 792 A.2d 1102, 1110 (2002)). In determining whether a plaintiff was contributorily negligent, courts should make all inferences "that may be fairly deduced from the evidence" in the plaintiff's favor. *Balt. & O.R.*, 278 A.2d at 293 (quoting *Balt. Transit Co. v. Castranda*, 71 A.2d 442, 447 (Md. 1950)). In Maryland, if a plaintiff was contributorily negligent, the plaintiff's recovery is completely barred. *See, e.g.*, *id.*; *Harrison v. Montgomery Cnty. Bd. of Educ.*, 456 A.2d 894, 898 (Md. 1983) ("[A] plaintiff who fails to observe ordinary care for his [or her] own safety is contributorily negligent and is barred from all recovery, regardless of the quantum of a defendant's primary negligence.").

Whether a plaintiff was contributorily negligent is typically "a question of fact for the jury and not of law for the court." *Diffendal v. Kash & Karry Serv. Corp.*, 536 A.2d 1175, 1178 (Md. App. 1988) (quoting *Borsa v. Great Atl. & Pac. Tea Co.*, 215 A.2d 289, 293 (Pa. Super. Ct. 1965)); *see also Davis-Brown v. Scott Mgmt., Inc.*, No. JKS-13-3319, 2014 WL 6646921, at *4 (D. Md. Nov. 20, 2014) ("The question [of] whether the conduct of a business invitee constitutes negligent inattention to surroundings is a highly-fact specific question that often should be left for the jury.").

For a case to be "withdrawn from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonably minds." *Balt. & O.R.*, 278 A.2d at 293 (quoting *Balt. Transit*, 71 A.2d at 447).

In trip and fall cases, such a "prominent and decisive act" generally requires both knowledge of the danger and some affirmative act disregarding the danger. For example, in *McManamon v. High's Dairy Products Corp.*, 187 A.2d 318, 318 (Md. 1963), the plaintiff slipped on the damp floor of a milk store despite "awareness of the danger . . . ." The plaintiff testified that she:

> noticed that the floor in front of the door of the refrigerator containing the milk on sale was damp. She walked slowly towards the refrigerator door because she was pregnant, opened the door, got out a bottle of milk, turned around, took one step and, when she "went to take the next one," fell down.

*Id.* The Court held that the plaintiff was contributorily negligent because she was aware of the danger of walking on the damp floor, "[y]et she chose to walk on the treacherous surface[,]" thereby "bec[oming] the author of her own misfortune." *Id.* Similarly, in *Craig v. Greenbelt Consumer Services, Inc.*, 222 A.2d 836, 837 (Md. 1966), the plaintiff slipped on a pile of sawdust that had been sprinkled on the ground of a store to soak up moisture from a spilled carton of milk. The plaintiff testified that she saw the sawdust and "knew it was slippery." *Id.* The Court held the plaintiff to be contributorily negligent because "she saw the sawdust in the aisle and . . . knew it to be slippery, yet she, without hesitating to plan her course, intentionally walked into the sawdust when she had a reasonable alternative of walking on the section of the aisle which was clear." *Id.* In *McManamon* and *Craig*, therefore, the plaintiff's awareness of the danger and

15

affirmative disregard for it constituted a "prominent and decisive act," amounting to contributory negligence.

By contrast, in *Frostbutter v. Bob Evans Farms*, the plaintiff's awareness of the danger before her accident did not determine that she was contributorily negligent. 2013 WL 4026985, at *7-*8. There, the plaintiff tripped over a curtain hanging below the sink in the bathroom of a restaurant. *Id.* at *1. The plaintiff knew of the curtain, having testified that "it had 'always' been there 'for a long time'" and that "it [was] 'the first thing you see' when entering the restroom." *Id*. Despite her knowledge of the danger, the Court found that the plaintiff had not committed any "prominent or decisive act" causing her accident. *Id.* at *9. Rather, the court opined, "she merely entered the restroom, washed off her glasses, conversed with the customer next to her, and tripped when she turned to exit." *Id.*

Importantly, when assessing whether a plaintiff was contributorily negligent, "the reasonable care standard" expected of the plaintiff "is more lenient for business invitees in retail establishments, where owners should expect customers to be distracted by the attention-grabbing displays of goods for sale." *Id.* at *8 (citing *Tennant*, 693 A.2d at 392). In considering whether a customer's "failure to observe a dangerous condition on the premises constitutes negligent inattention, the fact that the possessor of the premises has eye[-]catching objects on display which divert the visitor's attention is an important factor for consideration." *Diffendal*, 536 A.2d at 1178 (quoting *Borsa*, 215 A.2d at 292-93). The proper standard of care when assessing contributory negligence "is the conduct of an ordinarily prudent person under the same or similar circumstances, and not that of a very cautious person . . . ." *Id.* "A reasonable inference is that an ordinarily prudent person, while shopping in a supermarket, with her attention drawn to the selection of merchandise displayed . . . could make . . . [an] error of judgment, and trip over a[n object] placed

16

in an aisle near the displays of merchandise." *Id.* Even when a person makes an error of judgment it will not amount to contributory negligence if the ordinarily prudent person would have made the same error. *Id.*

Applying these principals here, Plaintiff was not, as a matter of law, contributorily negligent because she committed no "prominent and decisive act leaving no room for difference of opinion thereon by reasonable minds." First, as discussed, it is not clear from the evidence that Plaintiff knew of the dangerous condition. Plaintiff testified that she did not see the bag of soil on the ground before she tripped on it. Defendant argues that Plaintiff must have seen the bag of soil because her shopping cart was a traditional see-through wire cart, and Plaintiff initially avoided hitting the bag with her cart and "maneuvered her cart around the bag" before looking at the display table. ECF No. 23-2, at 10. In deciding a motion for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. Viewing these facts in the light most favorable to Plaintiff, there is, at least, a dispute of material fact as to whether Plaintiff was aware of the dangerous condition. Without awareness of the dangerous condition, one cannot commit a "decisive" act disregarding the danger.

Additionally, even if the Court were to assume that Plaintiff did see the bag of soil before she walked to the display table, it would not determine that Plaintiff committed a "prominent and decisive act," leaving no room for disagreement of reasonable minds. As this Court held in *Frostbutter*, in some circumstances, a plaintiff's awareness of a danger is insufficient to conclude, as a matter of law, that the plaintiff was negligent. In that case, the plaintiff had seen and knew about the curtain on which she tripped when she turned to exit a restroom; yet, this Court opined that the plaintiff was not negligent as a matter of law because the "[d]efendant could have anticipated that customers' attention would be focused on the sink and mirror and not the curtain

below." *Frostbutter*, 2013 WL 4026985, at *9. Likewise, here, even if Defendant is correct that Plaintiff saw the bag of soil on her way to the display table, Plaintiff, like the plaintiff in *Frostbutter*, is entitled to have her claim heard at trial because, on her return to her cart, she may have been distracted by the geraniums of which Defendant was aware.[2] This consideration is of particular importance given the retail context in which the accident occurred.

Accordingly, the Court cannot conclude, as a matter of law, that Plaintiff was contributorily negligent.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment is DENIED.

So ordered.

Date: November 7, 2023                                  /s/
                                                Ajmel A. Quereshi
                                                U.S. Magistrate Judge

---

[2] The Appellate Court of Maryland has also acknowledged that, at least in some cases, storeowners should expect that even when a person has discovered or been warned of a dangerous condition, "after a lapse of time[,] [they] may forget the existence of the condition." *Tennant*, 693 A.2d at 376 (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 61, at 425-26 (5th ed. 1984)).